# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHRISTOPHER BAEZA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>OFFICER GRUNDOWICZ, CHIEF OF POLICE KEDRICK SADLER, SERGEANT JUSTIN PECCHIA, COUNCILMAN PETER WEISS, CITY ATTORNEY NELSON CANDELARIO, RISK MANAGEMENT MANAGER DENISE GALLEGOS, CITY OF OCEANSIDE,<br><br>　　　　　　　　　　Defendants. | Case No.: 24-cv-00999-DMS-BJW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

　　　　Pending before the Court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), (Second Am. Compl. ("SAC"), ECF No. 33), pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot., ECF No. 34). Plaintiff, proceeding pro se, filed a response in opposition, (Opp'n, ECF No. 35), and Defendants filed a reply,

(Reply, ECF No. 37).[1]  The matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (ECF No. 38).  For the following reasons, the Court grants in part and denies in part Defendants' motion.

## I. BACKGROUND

### A. Plaintiff's Allegations

This case arises out of a traffic stop involving Plaintiff and Defendant Oceanside City Police Officer Eugene Gruntowicz (spelled "Grundowicz" in the SAC).  (SAC 2).  On June 8, 2022, Plaintiff alleges he was pulled over by Officer Gruntowicz for "driving in the Bike Lane [while] preparing to make a right turn at the next intersection."  (*Id.*).  Officer Gruntowicz cited Plaintiff for a violation of California Vehicle Code ("Vehicle Code") section 21755 (unsafe passing of another vehicle on the right), and wrote on the citation the letter "B" in the "race field of the ticket."  (*Id.*).  Plaintiff noticed the "B" on the citation and asked Officer Gruntowicz if he was trained by his employer on how to identify the race of an individual.  (*Id.*).  Officer Gruntowicz responded in the negative and noted that he was required "to complete [Racial Identity and Profiling Act] forms back at the office when he returns."  (*Id.*).

On September 28, 2022, Plaintiff made a formal complaint to the Oceanside Police Department ("OPD") regarding "two separate instances of racial profiling": the June 8, 2022 traffic stop and an earlier, separate interaction with another OPD officer who asked Plaintiff "if he was on 'Parole or Probation.'"  (*Id.* at 3).  Plaintiff believes the officer in the earlier interaction viewed him "as a criminal based on his dark skin color and/or perceived race."  (*Id.*).  On September 29, 2022, Sergeant Justin Pecchia emailed Plaintiff to confirm that his complaint was received.  (*Id.* at 4).  Plaintiff conveyed to Pecchia his prior two experiences with OPD officers.  (*Id.*).  Plaintiff then requested the training

---

[1] Plaintiff also filed a notice of opposition, wherein he requested leave to amend his SAC if the Court granted the present motion.  (ECF No. 36, at 3).  The Clerk's Office construed the notice to be a separate motion for leave to amend the SAC.  This Order resolves both the motion to dismiss and ECF No. 36.

document relevant to how an officer would complete the "race field" on a traffic citation. (*Id.*). Pecchia sent Plaintiff a document called "Volume III section 200," which made no specific reference to the race field. (*Id.*). Plaintiff's formal complaint to OPD was not resolved in his favor. (*Id.*).

On January 20, 2023, Deputy City Attorney Nelson Candelario called Plaintiff, informing him that "he would speak with the Chief of Police regarding" Plaintiff's complaint; however, the Chief of Police, Defendant Kendrick Sadler, never contacted Plaintiff. (*Id.*). During the call, Candelario asked Plaintiff his occupation, which Plaintiff found to be irrelevant and an invasion of his privacy. (*Id.*). Plaintiff then requested that Candelario "document [his] actions with written entries into the City of Oceanside web portal ticketing system." (*Id.*). At some point, more than six months after the June 8, 2022 incident, Candelario put Plaintiff in contact with Risk Management Manager Denise Gallegos to file a claim with the City of Oceanside ("the City"). (*Id.*). On February 1, 2023, Gallegos provided Plaintiff with a claim form that "is not available to the public[.]" (*Id.* at 5). Because the form is not available to the public, "it was not feasible for [Plaintiff] to complete a claim form within [six] months" of the June 8, 2022 incident. (*Id.*). On February 22, 2023, Gallegos left a comment on the City's web portal ticketing system stating "[a]t the direction of . . . City Attorney, Risk Management will refrain from engaging in communications with this individual." (*Id.* at 4). On April 14, 2023, Plaintiff asked Gallegos for "Leave to Present a Late Claim" to avoid the six-month deadline, but "that request went unanswered." (*Id.* at 5). Plaintiff alleges "[n]o corrective action was taken [regarding his complaint,] and the conditions remain to allow for continued racial profiling." (*Id.* at 3).

**B. Procedural Posture**

Plaintiff filed his initial complaint on April 7, 2024, alleging claims under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights as well as his rights under 5 U.S.C. § 552a (Privacy Act). (Compl., ECF No. 1). Defendants filed a motion to dismiss, (ECF No. 15), which was granted with leave to amend except for the

§ 552a claim. (ECF No. 20). Plaintiff thereafter filed his First Amended Complaint ("FAC") adding among other allegations that he "suffered mental and emotional distress from being racially profiled and having his rights violated by the defendants." (First Am. Compl. ("FAC"), ECF No. 21, at 14–15). Defendants again moved to dismiss. (ECF No. 25). The Court granted the motion to dismiss, but granted leave to amend claims related to the Fourth Amendment and Civil Rights Act of 1964. (ECF No. 30, at 16).

Plaintiff now alleges three claims that appear to be based upon theories of improper race identification, profiling, unjustified traffic stop, failure to take corrective action, retaliation, and municipal liability for ratification and failure to train. The SAC asserts the following claims: (1) 42 U.S.C. § 1983 against all Defendants for violations of the Fourth Amendment right against unreasonable seizures and the Civil Rights Act of 1964 ("Claim 1"); (2) § 1983 against Officer Gruntowicz for violations of the Fourth Amendment right against unreasonable seizures ("Claim 2"); and (3) § 1983 against all Defendants for violations of the Civil Rights Act of 1964 ("Claim 3").

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[I]n general, courts must construe pro se pleadings liberally." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.   DISCUSSION

#### A. Omitted Defendants

Plaintiff originally sued Pecchia, Candelario, Gallegos, and Councilman Peter Weiss, in addition to Officer Gruntowicz, Chief Sadler, and the City. (Compl.); (FAC). While factual allegations against these persons remain in the SAC, the caption and the "Parties" section only list Officer Gruntowicz, Chief Sadler, and the City as Defendants. (SAC 1). Defendants argue that because the SAC "seemingly abandoned claims" against Pecchia, Candelario, Gallegos, and Weiss, claims against these individuals should be dismissed with prejudice. (Mot. 5). Plaintiff does not argue in his Opposition that these individual Defendants should remain parties to this lawsuit. Plaintiff's SAC supersedes all previous complaints, and because no claim in the SAC is stated against Pecchia, Candelario, Gallegos, and Weiss, these individuals are hereby **DISMISSED**. *See, e.g.*, *Hendrix v. Neighbors*, No. 13-cv-01527-JAD-CWH, 2015 WL 4548722, at *2 (D. Nev. July 27, 2015).

#### B. Official Capacity

Under the Eleventh Amendment, state officials cannot typically be sued in their official capacity. *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir.

1997) (stating "state officials sued in their official capacities are not 'persons' within the meaning of § 1983"). There are three exceptions to this general rule: "First, a state may waive its Eleventh Amendment defense. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a 'suit against a state official when that suit seeks . . . prospective injunctive relief.'" *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001), *amended*, 285 F.3d 1226 (9th Cir. 2001) (citations omitted).

Plaintiff is suing Officer Gruntowicz and Chief Sadler in their official capacities, and requests injunctive relief and damages. (SAC 5–7). Thus, the Eleventh Amendment bars Plaintiff's § 1983 claims as to these Defendants unless any of the three exceptions apply. The Court explained in its prior Order why the first two exceptions are inapplicable. (ECF No. 20, at 4–5). Plaintiff was afforded leave to amend to allege facts sufficient to meet the third exception. (*Id.* at 5–6). To bring a claim for prospective relief, Plaintiff needs to demonstrate "that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680–81 (9th Cir. 2023) (citation omitted). Plaintiff "may demonstrate that an injury is likely to recur by showing that the defendant[s] had . . . a written policy, and that the injury 'stems from' that policy. Where the harm alleged is directly traceable to a written policy[,] there is an implicit likelihood of its repetition in the immediate future." *Id.* at 681 (quoting *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 642 (9th Cir. 2008)). Plaintiff alleges that his injury stemmed from a failure to train law enforcement officers on race identification, not that a written policy allowed his injury to occur. (SAC 2–5). Plaintiff fails to otherwise allege a likelihood of repeated harm. Thus, the third exception to Defendants' Eleventh Amendment immunity does not apply to Plaintiff's claims. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 official capacity claims against Officer Gruntowicz and Chief Sadler.

**C. Individual Capacity**

To state a claim for relief under § 1983 against individuals, Plaintiff must sufficiently allege: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff asserts violations of the Fourth Amendment and the Civil Rights Act of 1964 as the basis for his § 1983 claims. (SAC 5–6).

### 1. Fourth Amendment – Unreasonable Seizure[2]

Plaintiff alleges in Claims 1 and 2 that Officer Gruntowicz unreasonably seized Plaintiff by conducting a traffic stop for a violation that Plaintiff did not commit. (*Id.* at 5). It appears Chief Sadler is also sued under Claim 1 via supervisor liability. (*Id.*). The Fourth Amendment protects against "unreasonable . . . seizures." U.S. Const. amend. IV. "[S]topping an automobile and detaining its occupants, 'even if only for a brief period and for a limited purpose,' constitutes a 'seizure' under the Fourth Amendment[.]" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). "[A]n official must have individualized 'reasonable suspicion' of unlawful conduct to carry out such a stop." *Id.* "To be lawful, a traffic stop must be limited in its scope: an officer may address the traffic violation that warranted the stop, make ordinary inquiries incident to the traffic stop, and attend to related safety concerns. The stop may last no longer than is necessary to effectuate these purposes and complete the traffic mission safely." *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) (citation and internal quotation marks omitted).

Plaintiff argues that his Fourth Amendment rights were violated because Officer Gruntowicz had no lawful basis to conduct a traffic stop. (SAC 5). Plaintiff contends that he did not violate Vehicle Code section 21755, as cited by Officer Gruntowicz, but instead

---

[2] Plaintiff no longer alleges that he was unlawfully searched. (SAC 5).

was "legally driving in a bike lane preparing to make a right turn," as permitted by Vehicle Code section 21209. (*Id.* at 2, 5). Section 2109 permits driving in a bicycle lane "[t]o prepare for a turn within a distance of 200 feet from the intersection." Cal. Veh. Code § 21209. Defendants argue that because Plaintiff admits driving in a bicycle lane, Defendants meet the "low burden for an investigatory traffic stop." (Mot. 15–16). Defendants also argue that Plaintiff does not allege that Officer Gruntowicz made "unrelated inquiries that prolonged the traffic stop or otherwise acted improperly and therefore he fails to state a claim that he was unlawfully detained." (*Id.* at 16).

The Court agrees that Plaintiff does not allege that Officer Gruntowicz improperly prolonged traffic stop. In fact, Plaintiff alleges that Officer Gruntowicz did *not* ask him questions (specifically regarding his race), and it was Plaintiff who initiated the brief conversation with Officer Gruntowicz about whether the officer received training on identifying people's race. (SAC 2). Plaintiff, however, sufficiently alleges that Officer Gruntowicz lacked reasonable suspicion to stop him. Plaintiff alleges he was pulled over and cited for driving in the bicycle lane despite lawfully being in the lane under Vehicle Code section 21209. Thus, accepting Plaintiff's factual allegations as true and construing the pleadings in the light most favorable to the nonmoving party—as this Court is required to do—it is plausible that Officer Gruntowicz did not have reasonable suspicion to conduct the traffic stop. Defendants' motion to dismiss the Fourth Amendment related claims against Officer Gruntowicz is therefore **DENIED**.

Plaintiff alleges that Chief Sadler took no corrective action after Plaintiff filed a formal complaint about two separate instances of racial profiling. (*Id.* at 3). "Supervisory officials 'may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.'" *Doe v. City of San Diego*, 35 F. Supp. 3d 1214, 1225 (S.D. Cal. 2014) (italics in original) (quoting *Ashcroft*, 556 U.S. at 676). "[S]upervisory liability can be imposed only if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* (citation omitted).

Plaintiff's allegations against Chief Sadler, such as "[n]o corrective action was taken," are conclusory. Further, the allegations do not sufficiently establish that Chief Sadler was personally involved in the traffic stop or that there is a sufficient causal link between Chief Sadler's reported conduct and the Fourth Amendment violation. Defendants' motion to dismiss the Fourth Amendment related claim against Chief Sadler is therefore **GRANTED**.

### 2. Racial Profiling under the Civil Rights Act of 1964

Plaintiff alleges in Claims 1 and 3 that Officer Gruntowicz and Chief Sadler violated his right to be free from racial profiling under the Civil Rights Act of 1964. (SAC 5–6). Plaintiff alleges Officer Gruntowicz violated the Civil Rights Act by subjecting him "to racial profiling" when he identified Plaintiff as Black during a traffic stop. (*Id.* at 6). He alleges that Chief Sadler "allow(ed)" officers to profile Plaintiff and "failed to provide instructions on how to determine the race of a driver when completing traffic tickets." (*Id.*). Plaintiff still fails to identify what provisions of the Civil Rights Act Defendants allegedly violated. Plaintiff's conclusory allegations remain untethered to a cognizable legal theory—*i.e.*, to specific provisions of the Civil Rights Act that proscribe racial profiling by a government entity or otherwise address the conduct attributed to Defendants. Therefore, Plaintiff fails to state a claim for violation of the Civil Rights Act and hence a violation of § 1983. Plaintiff's claims against these Defendants on this theory are **DISMISSED**.

### 3. Qualified Immunity—Officer Gruntowicz[3]

Officer Gruntowicz is entitled to qualified immunity if (1) "the officer's conduct violated a statutory or constitutional right"; and (2) "that right was 'clearly established' at the time of the incident." *Shane v. County of San Diego*, 677 F. Supp. 3d 1127, 1134 (S.D. Cal. 2023). Because this Court concludes that Plaintiff's SAC sufficiently alleges violations of Plaintiff's Fourth Amendment rights against unlawful seizures (i.e., unlawful

---

[3] Because the claims against Chief Sadler are dismissed for the reasons set out above, the Court declines to address whether he benefits from qualified immunity.

traffic stops), the only question that remains is whether those rights were "clearly established" at the time of the incident.

"For the purposes of qualified immunity, a right is clearly established if 'a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time.'" *Id.* (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006)). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (citation omitted). Plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (citation omitted). Plaintiff "must either explain why [his] case is obvious under existing general principles or, more commonly, show specific cases that control or reflect a consensus of non-binding authorities in similar situations." *Waid v. Cnty. of Lyon*, 87 F.4th 383, 388 (9th Cir. 2023).

"If a right is not clearly established, the defendant is entitled to qualified immunity. If the right is clearly established, the court determines 'whether the defendant's conduct was objectively legally reasonable given the information possessed by the defendant at the time of his or her conduct.'" *Shane*, 677 F. Supp. 3d at 1134 (quoting *Lawerence v. U.S.*, 340 F.3d 952, 956 (9th Cir. 2003)). "When defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the court can determine, based on the complaint itself, that qualified immunity applies." *Id.*

The Court finds that Plaintiff has met his burden to demonstrate that his alleged violated rights were clearly established at the time of the traffic stop. It is well established that if a police officer pulls over a driver without reasonable suspicion, there is a Fourth Amendment violation. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003), *abrogated on other grounds by Virginia v. Moore*, 553 U.S. 164 (2008); *U.S. v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002); *Price v. Kramer*, 200 F.3d 1237, 1248 (9th Cir 2000). Therefore, Plaintiff's unlawful seizure claim against Officer Gruntowicz, as currently pled, is an "obvious case" under general Fourth Amendment principles. At this

stage and on the present record, the Court declines to apply qualified immunity to the claim against Officer Gruntowicz.

### D. *Monell* Claims

Plaintiff appears to allege *Monell* claims against the City (Claims 1 and 3). (SAC 5–6). Defendants argue that "there are . . . no properly alleged constitutional violations against" the City, (Mot. 7), but do not explicitly argue that Plaintiff failed to sufficiently allege *Monell* claims against the City. Nonetheless, the Court considers whether Plaintiff sufficiently pled *Monell* claims.

A municipality cannot be vicariously liable under § 1983 for the acts of its employees, but a municipality can be liable for deprivations of constitutional rights deriving from the execution of a municipality's policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim under § 1983, a plaintiff must sufficiently allege "(1) he was deprived of a constitutional right; (2) the [local government] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

Plaintiff also appears to allege "failure to train" municipal liability under § 1983. To state a claim under that theory a plaintiff must allege: (1) the City had "an inadequate training program"; (2) "deliberate indifference on the part of the [City] to adequately training its law enforcement officers"; and (3) that the inadequate training caused a deprivation of the plaintiff's constitutional or statutory rights. *See Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); Ninth Cir. Model Jury Instrs. Civil 9.8 (2017).

Lastly, to establish municipal liability under a "ratification" theory, the plaintiff must establish the existence of an unconstitutional or statutorily unlawful policy and that the municipal policymaker's decision was the product of a "conscious, affirmative choice" to

ratify the conduct in question. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Ratification requires "both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." *Lytle v. Carl*, 382 F.3d 978, 988 n.2 (9th Cir. 2004).

Plaintiff's allegations in the SAC are too sparse and conclusory to adequately allege Plaintiff's "injury resulted from a 'permanent and well settled' practice" arising from a "local government custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (citation omitted). For example, Plaintiff's conclusory allegation that "[n]o corrective action was taken and the conditions remain to allow for continued racial profiling" is insufficient. (SAC 3). Further, Claim 3 is dismissed because Plaintiff has failed to adequately allege that he was deprived a statutory right under the Civil Rights Act. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights."). Accordingly, the Court **DISMISSES** Plaintiff's *Monell* claims under all the alleged theories against the City (Claims 1 and 3).

### E. Leave to Amend

"A district court may deny a plaintiff leave to amend if it determines that . . . the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *see also Swallow v. Torngren*, 789 F. App'x 610, 612 (9th Cir. 2020) (affirming dismissal without leave to amend after Plaintiff "amended his Complaint once as a matter of right"). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

In its prior Orders, the Court provided Plaintiff leave to amend to cure deficiencies related to: (1) suing Officer Gruntowicz and Chief Sadler in their official capacity, (ECF No. 20, at 4–6, 9); (2) the § 1983 claim predicated on a violation of the Civil Rights Act,

(ECF No. 30, at 12, 15–16); and (3) the claims against the City, (*id.* at 13–16). Plaintiff has failed to cure these deficiencies in his SAC. The Court finds it would be futile under the circumstances to permit another round of amendments for these issues.

### IV.   CONCLUSION

Based on the foregoing, the County's motion to dismiss is: (1) **DENIED** as to Plaintiff's Fourth Amendment claims against Officer Gruntowicz in his individual capacity; and (2) **GRANTED without leave** to amend as to the remainder of the SAC. Because there are no surviving claims against Chief Sadler and the City, Chief Sadler and the City are hereby **DISMISSED with prejudice**, and because claims against Pecchia, Candelario, Gallegos, and Weiss have been abandoned, these Defendants are **DISMISSED with prejudice**. Officer Gruntowicz will answer the Complaint within 14 days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: October 14, 2025

Hon. Dana M. Sabraw
United States District Judge